Mr. Rutledge, welcome back to the Fourth Circuit for the benefit of my colleagues. Mr. Rutledge clerked on this court for Judge Wilkinson many years ago, and he's now a distinguished professor at the University of Georgia Law School. Thank you, Chief Judge Traxler. I hope his career went up from there, didn't it? It did, because he went on to Supreme Court. I was just grateful that the court security guards let me through the building this morning, Judge. We were surprised. May it please the court, Peter Rutledge, on behalf of the appellant, by prior arrangement with this court, Katie Krogan, a third-year law student at the University of Georgia Law School and a member of the school's appellate litigation clinic, will make the argument on behalf of Mr. Ford. Pursuant to this court's Rule 46, I will remain at counsel's table, and at any time will be prepared to address questions the court wishes to propound to me directly. Thank you. Thank you. All right, Ms. Krogan, whenever you're ready. Thank you, Your Honors, and may it please the court, my name is Katie Krogan, and I represent the petitioner, Mr. Luther Ford. Mr. Ford was denied effective assistance of counsel twice. First, when his plea counsel failed to tell him about an available lesser-included offense instruction, which could have resulted in a significantly reduced sentence at trial. And this is critical, Your Honors, because as a result, Mr. Ford accepted a plea that gave him no better than the worst-case scenario at trial. And second, Your Honors, Mr. Ford's PCR counsel failed to ask a single direct question on the issue this court is now reviewing to protect Mr. Ford's claim from any cloud of procedural default. And this, Your Honors, is also critical because under a recent Supreme Court case, Martinez v. Ryan, Mr. Ford can likely excuse any concerns with the procedural default because he meets the necessary requirements. As a result, Mr. Ford would ask this court either to grant his petition for habeas relief or to remand this case for an evidentiary hearing to determine whether or not Mr. Ford meets all of the necessary prongs of Martinez. Now, Your Honors, I'd like to move directly to Martinez because it is the basis of the warden's argument that Mr. Ford's claim was procedurally defaulted. Mr. Ford does not agree that this is the case and instead agrees with the district court. However, in the event this court concludes that it is procedurally defaulted, he meets the necessary requirements of Martinez and thus may excuse any procedural default concerns. Martinez allows a petitioner like Mr. Ford to excuse these claims if he meets three requirements. First, the state from which the petitioner comes must allow an effective assistance of counsel claims to be raised only in collateral appeals. And South Carolina law requires this, especially in Mr. Ford's case when it comes from a plea context. And second, Mr. Ford... If we were to decide that he's not entitled to that charge, does procedural default matter? Your Honor, whether or not Mr. Ford's entitled to the instruction for involuntary manslaughter is really the crux of this case. However, South Carolina law has an extremely lenient standard when determining whether or not a person's entitled to an instruction. State v. Tisdale is kind of a classic example of the circumstances in that case. The petitioner, even though there was basically no forensic evidence indicating that there had been a struggle and said it looked almost like there had been an execution, the petitioner, in kind of a shocking testimony before the court, stated that there had been a struggle. And in that case, the Supreme Court... How many shots were fired? Two, Your Honor, I believe. In that case, the court concluded that because there had been some testimony, regardless of whether or not it was believable that there had been a struggle, this was sufficient to entitle a particular defendant to the instruction for involuntary manslaughter. Also, in State v. Crosby, the court indicated that the question is now whether or not the evidence suggests very strongly that there was something other than a higher charge, but only that a petitioner can make out a very basic facial statement that indicates that they're entitled or they could have been convicted of the lesser rather than the greater crime. So your view is that if somebody will say it, then they're entitled as a matter of law to the lesser included charge, or they just say it was an accident? Under State v. Tisdale, that would tend to be the... I didn't say what it tends to be. That's what you think the law is. If a person will say under any circumstances there was an accident that entitles that person to an involuntary manslaughter charge. From the case law, yes, Your Honor, that would be the circumstances. Here, Mr. Ford may not have even known of the actions that he was taking. He suffers from significant capacity concerns. Do you think that it matters the number of shots or stab wounds in any specific fact scenario, or that's not to be considered? The only thing that matters is that a defendant will say it was an accident. No, Your Honor. The number of stab wounds should not matter for an instruction question. In fact, in State v. Gibson, a 2010 case, the court said that the essence of the involuntary manslaughter instruction is the involuntary nature of the killing. So how many times a person is stabbed should not bear on whether or not they're entitled to the instruction, especially given the fact... Your view of the law is that if a victim, this is a hypothetical, had been stabbed a thousand times, and the defendant says, I was running with a knife and slipped and fell and stabbed that person, then the defendant would be entitled as a matter of law to a charge on involuntary manslaughter. That's extraordinarily likely, Your Honor, because of the fact that all South Carolina requires is there to be some... What's extraordinarily likely? Your Honor, all South Carolina requires is that the petitioner can make, or defendant, can make out some basic claim that could show that they could be convicted of a lesser crime. Your view of the law is that he would be entitled as a matter of law, in my hypothetical, to an involuntary manslaughter charge. Yes, Your Honor. Additionally, as I mentioned before, Mr. Ford does have significant capacity concerns, which bear further weight, especially on the question of whether or not the number of stab wounds should have any sort of bearing. Mr. Ford suffers from alcohol-induced dementia, which is a persisting condition, which is not necessarily dependent on being drunk at the time. He may have been suffering from it, and indeed there's some evidence in the record to suggest that he was suffering from it on the night in question. And if that's the case, it's highly likely that Mr. Ford did not know of the actions that he was taking. And this is sufficient under South Carolina law to at least entitle him to the basic instruction. Now, if Mr. Ford was entitled to the instruction, then his attorney had an obligation... What was that interplay again? If he may have blacked out, he's entitled to the instruction? Your Honor, based on... What's the interplay between the, what do you call it, alcohol syndrome, what do you call it? Alcohol-induced persisting dementia, Your Honor. Okay. What's the relationship between that and the entitlement as a matter of law to the involuntary manslaughter charge? Your Honor, because Mr. Ford can make kind of a facial claim that he was not aware of his actions that he was taking and may not have even been in control of himself at the time in question, he can make a facial argument, a very basic argument that perhaps he was entitled to it. Does he even need to claim that it was involuntary? If he just says, I don't know what happened, then he's entitled to an involuntary manslaughter charge? No, Your Honor, the involuntary manslaughter charge requires a lack of intent, so there needs to be... What does that have to do with alcohol syndrome? It's simply that it may have significantly affected Mr. Ford's intent and that his later statements, especially that he had no knowledge of the actions that he was taking... I'm saying that may go to the question of intent to meet what he was convicted of, maybe, but I still don't understand your, I thought you said earlier, I know you said earlier, if a person's willing to say they did it by accident, then they're entitled to an involuntary manslaughter charge. Is that correct? Yes, Your Honor. Now what does, I understand you're making some question about lacking of intent because of the alcohol dementia, but what does that have to do with the entitlement to the involuntary manslaughter charge? Anything? It's merely additional evidence that this court can use to determine that Mr. Ford lacked the requisite intent to be charged with something higher than involuntary manslaughter. That's a different question. It's not a question of entitlement to involuntary manslaughter charge. It's just failure of proof on the voluntary manslaughter. No, Your Honor, and I apologize if I'm misconstruing your question, but the fact that Mr. Ford lacked the requisite intent at least presents a basic case that he was entitled... That wouldn't mean that he would be necessarily, he may not even want an involuntary manslaughter charge. He just may want to use his lack of intent because of the syndrome to get a not guilty verdict. I'm just trying to understand the interplay between, you shifted gears on me and I didn't quite follow that, the alcohol syndrome, that has something to do with the entitlement to an involuntary manslaughter charge? Yes, Your Honor, I'd like to answer that in two parts. First, Mr. Ford may have gone to trial and requested something other than involuntary. He might have attempted to get an acquittal. However, the question in this particular case is whether his attorney was obligated to tell him about the involuntary manslaughter instruction. Since South Carolina has a very lenient standard in granting these instructions, as long as Mr. Ford... So you say that his lawyer should have said to him, because of your alcohol circumstance, you may be in a position to argue for an involuntary manslaughter because you lack of intent. That's the second basis to get that involuntary manslaughter charge. Could be. Yes, Your Honor. And it's actually quite telling that in the record when Mr. Ford's plea counsel was asked during the PCR hearing whether or not it was possible that Mr. Ford could have had a better outcome at trial, he says that was certainly possible. And if that's the case, and if Mr. Ford's plea counsel was aware in any way of the possibility to pursue this lesser included offense instruction, he should have told Mr. Ford of the opportunity to do so. And the reason this is critical is because, as a result, Mr. Ford accepted a plea that gave him absolutely no better than the worst case outcome at trial. In fact, the only option he had of anything other than life in prison without the possibility of parole was proceeding to trial and attempting either to get an acquittal or an involuntary manslaughter. Do you think a person can reasonably enter such a plea? Yes, Your Honor, especially in Mr. Ford's case. It's very unique in the sense that this was his only option to get anything other than life in prison without possibly parole. No, no, I'm saying under this scenario, do you think that a reasonable person could or never would enter a plea like this? Yes, Your Honor, I do think, oh, Mr. Ford's plea. Yes, there are circumstances where it might be reasonable. Perhaps, for example, when they had no knowledge of the fact they could pursue anything other than a higher instruction. Like they thought they did it and they wanted to get this into the plea. What about that? That is possible, Your Honors, but Mr. Ford has maintained throughout the process that he wanted to go to trial and would have had he known that he was entitled to a lesser included offense instruction. And this is quite critical because the evidence in the record suggests that his attorney told him that he was only going to leave prison in a pine box. Say that again? Leave prison in a pine box. Assumption being that he was only going to leave prison when he was dead, so if Mr. Ford did not know of the opportunity to get anything other than life in prison, then it makes sense for him to accept the plea, perhaps on the circumstances Your Honor is suggesting. But didn't the PCR judge make findings of fact about what he knew or what he was told by counsel? Your Honor, the PCR court did not directly make a finding of fact on what Mr. Ford was told by his counsel. The PCR court's decision rested largely on the fact that Mr. Ford understood that by accepting a plea he was getting life in prison without the possibility of parole. This is significant because of the standard under the AEDPA for whether or not the district court or the PCR court made a decision that was contrary to clearly established Supreme Court, or involved in unreasonable application of clearly established Supreme Court precedent. Mr. Ford argues that because the court, although it cited the correct standard, failed to actually conduct the applicable test, merely looking at whether or not his plea was knowing involuntary rather than whether or not he actually had received ineffective assistance was prejudiced. This is sufficient to allow this court to review this case. And I'd like to address one last issue in this. On the South Carolina law, he was entitled to counsel in that review as to ineffective assistance, correct, on collateral review? Yes, Your Honor. He did receive counsel. And in that proceeding, they pitched it as to the—they really challenged the voluntariness and not really what you are saying today, the cases, whether or not, in fact, he was properly advised, whether or not he could get an instruction on involuntary manslaughter, correct? Yes, Your Honor. So then you suggested, I think as an alternative at the very least, you're asking that we remand it to the state court with competent counsel or effective counsel, I should say. Making a proper record, because you admit the record is rather thin as the way it was pitched to in South Carolina, wasn't it? Yes, Your Honor, and the best option for this court would be to remand this case for an evidentiary hearing under Martinez. And that would allow this court to conduct the requisite inquiry into whether or not his plea— Judge Shader is an able jurist. He got you to a point of almost—you had to concede to an absurdity, I mean to a point like, obviously the facts of the case would have to be consistent in some way with some—like to get an instruction. But what you're saying is there are things here like there was some evidence there was a struggle before, his state of dementia, and things like that. If they were properly advised and he was aware of them, then that may deal with it. I think that's what you're—but certainly you couldn't say the person was gagged and bound and stabbed a hundred times and you say, you know, I'm sorry. I tripped over him and fell over him. It was an accident. That wouldn't be an instruction. Yes, Your Honor. Are you sure about that now? Are you sure that's your position? Your Honor, under South Carolina law, as long as they present some evidence, then this would be sufficient. So in that sense, yes. Some evidence, not a claim, because you were using the word claim. It takes more than a claim. It takes some evidence that's probative to support that. Well, Your Honor, I would direct your attention back to State v. Tisdale when the defendant simply stated— Okay, if you want to go to the point of absurdity, I don't think— The question is, is the defendant's testimony, is that sufficient in and of itself? Under State v. Tisdale, that would be sufficient. On the scenario, under your position, the scenario Judge Gregory just gave you, the victim was gagged and bound and all that, but yet the defendant said it was an accident. You think you would still be entitled as a matter of law to an involuntary manslaughter charge? Your Honor, those are not the facts of this case. I know that. It wouldn't be a hypothetical, then, would it? And your answer is what? Well, Your Honor, logically my answer would have to be yes, that as long as the defendant made that statement, that should be sufficient under South Carolina law. However, Mr. Ford's case is not like that. And as Your Honor mentioned, Mr. Ford does have a very thin record, so remanding it from— But the principle you're arresting, your legal argument is exactly that principle, that any evidence, no matter how it's contradicted at all by the record, unsupported, I mean uncorroborated testimony, that testimony by the defendant alone is enough as a matter of law to require an involuntary manslaughter charge. Yes, Your Honor. By the way, let me ask the question that—go back to—Roger, I didn't want to cut you off. I'm finished. Okay. Back to the question of fact-finding, this is what I thought I read in the record, that Blake told the trial judge that Luther and I had numerous discussions from the 18 months Ford had been in prison prior to the plea. Always the question was whether or not to go to trial, understanding that the end result of losing a trial would be the same as it would be today. And I believe really because of the prior convictions, a mandatory sentence. Isn't that Blake saying, I've talked to him about him and told him no matter what he did, the sentence was going to be the same? Your Honor, I see my time has expired. Go ahead. Thank you. Yes, Your Honor, that particular testimony suggests that he did discuss with his counsel but not that his counsel told him that he may, even if it was a very small chance, proceed to trial and receive an involuntary manslaughter instruction. And that's the issue for Mr. Ford is that going to trial was the only option he had for anything other than life in prison without parole because of the mandatory sentencing requirements under South Carolina. So, Your Honor, Mr. Ford asked that this court either remand for an evidentiary hearing or grant Mr. Ford's habeas appeal. Thank you. Thank you, Ms. Kroger. Mr. Anthony Mabry. Yes, sir. Good morning. My name is Anthony Mabry. I'm an assistant attorney general and I represent the warden, Robert Stevenson, in this case. On November 28, 2006, the appellate in this case obtained a knife and stabbed his girlfriend 39 times, including in the chest, killing her. Why isn't he entitled to an involuntary manslaughter charge as a matter of law? There is no evidence in the state court to support an involuntary manslaughter charge, Judge Shedd. Everything at the guilty plea was that I committed this crime, I committed it intentionally, I obtained a knife, I stabbed her 39 times, and I killed her. That was everything at the guilty plea. Then at the PCR hearing, as Judge Gregory pointed out, there was absolutely no evidence whatsoever introduced to support a charge of involuntary manslaughter. This defendant was never asked about did counsel advise or not advise you of the lesser included offense of involuntary manslaughter. He was never asked how did you commit this crime to justify an involuntary manslaughter charge. There is a complete absence of proof in the PCR transcript, which I believe is page 61 to 82. There's just absolutely nothing on this claim. You're absolutely right. I agree with you. I was amazed when I was looking at it. But don't you think that supports ineffective assistance at that level? Because you know that you're going there for the purpose of ineffective assistance, not a question of sufficiency or one of those things. That's the only way is that the counsel did something incorrect. It seems like the only thing he did was he based it on knowledge of whether or not it was voluntary or not, but that's not really ineffective assistance. You have to put, as you said, you ticked it off. You have to say this is what the evidence would have been. This is what was available, my dementia induced by alcoholism, the fight we had before this, the fatal stabbing. And counsel never told me I had even a shot at involuntary. But don't you think that is just wholesale ineffective assistance? No, I don't. Tell me why not. Well, because he could not get there under South Carolina law. Under South Carolina law, to be involuntary manslaughter, you have to have criminal negligence, and it has to be an unintentional killing. Under South Carolina law, if you use a deadly weapon or deadly instrument like a gun or knife, it has to be an accidental use of that weapon. If you intentionally use that weapon, you cannot get to involuntary manslaughter. If you look at all those cases where a gun was involved and an involuntary manslaughter charge was required, it's because the gun, the testimony from the defendant was the gun went off accidentally. If he said I pulled the trigger intentionally, he's not entitled to an involuntary manslaughter charge. In this case, the only evidence in state court, again, was he obtained a knife. After he became angry with his girlfriend, he took that knife and he stabbed her intentionally 39 times. There's nothing in the state court record, and there was nothing that this attorney representing him at the trial level could get to a jury on involuntary manslaughter. And you talked about the mental health aspect of it. Alcohol-induced dementia would not get you there. South Carolina recognizes a defense of involuntary intoxication. That is like if you drank alcohol and you had a crazy reaction to it, or you took some drugs and you had an unexpected reaction. That entitles you to a charge on involuntary intoxication, which is a defense, but you have to show you were insane at the time. A complete defense. It's a complete defense, but it does not get you to the lesser included offense of involuntary manslaughter. It might get you to something that would be helpful at his trial. That was the whole point. I suppose this man doesn't care how you get there as long as he doesn't have life without parole. It's an aspect you're right. It may not have been involuntary manslaughter, but it may have been a complete defense. How do you just ignore that when you have a person with long-term alcoholism resulting in some dementia, which is a DSM-III recognized mental problem? How do you tell a client that, oh, go ahead and get the worst sentence you can get by pleading guilty and ignore an opportunity to address the court with this defense? What does he have to lose? Unless you're bargaining for a color TV doing life sentence or VCR or something, what do you get out of it? Well, first of all, he's charged with murder. That's the offense he's charged with. The state only offered him a plea to voluntary manslaughter, and there's no question that his trial counsel or plea counsel communicated that offer to him. He couldn't force the state to make a better offer, not when he stabbed the lady 39 times and killed her. So he communicated that offer to him and said, look, we can go to trial. In fact, the testimony at the hearing was one time he told the client, make them work for it, and then the next time he said, well, it's up to you. But he never coerced this defendant into pleading guilty. Oh, no, no, I agree. I mean, this case goes nowhere with the involuntariness. I mean, clearly it's replete with evidence that he knew what he was pleading to. But the thing is that how do you get someone to plead to the worst thing that can happen to you, which is life without parole? There's not a death case. And you have here an opportunity, as now I think we've fared this thing out, perhaps a complete defense. Maybe. I don't know. We don't know because it was never tested. How do you not tell a client, let's go for it? I mean, I practiced law. I did criminal defense work for about 20 years. I just can't imagine saying, well, you know, plead guilty and you'll be in there the rest of your natural life. If you don't plead guilty, we might be successful at dementia. But if we're not, you're the same place you are with a plea. How in the world? I must be missing some common sense. How do you get someone to plead under those circumstances? He didn't get him to plead. He did. He made the decision to plead guilty. A lawyer doesn't get someone to plead. He doesn't make someone plead guilty, Judge Greger. He advised him of the options. We can go to trial on murder. If you're convicted, you're going to get life without parole. We can go to trial. You might get convicted of voluntary manslaughter. But you're still going to get life without parole. But they're offering you a voluntary plea. That's totally up to you, but you're going to get the same sentence. But he didn't make him plead guilty, as you said. And it's the defendant's decision. We have defendants. I've had defendants plead guilty to murder and the death penalty and ask for the death penalty. I can't tell you why they do that. Oh, yeah. You know what? The thing about it is I agree with you. You do. But I'm a lawyer. That's going to be a 20-page document saying I told him if he does this, he would be crazy to do it. And I could not believe it. Yeah, you're right when they do. But believe me, it's documented that that's in spite of my telling him, you are crazy to plead guilty. Nothing else. It's a field day. You don't get a chance to go to court, see people. You're going to be in prison the rest of your life. Why not? Well, I don't know what was going on in the defendant's mind as far as why he pled. But he may have pled guilty to voluntary manslaughter because he didn't want to go to prison as a convicted murderer. He may have wanted to go down to prison on voluntary manslaughter because he thought someday he might get a pardon from the governor  I don't know what's going through his mind. But defendants can make those decisions as long as that information is communicated to them. But that issue is not here. They haven't raised an issue to this court that trial counsel was ineffective for not pursuing an insanity defense or an involuntary intoxication defense. What they're claiming is here. The only issue is whether he was ineffective in failing to advise him of involuntary manslaughter. And he cannot get there on the facts of this case. Do you think that the other side has the law right, and they may have it right, if he's willing to say that it was an accident? If a person's willing to say it's an accident, would that entitle a person to an involuntary manslaughter charge? As strange as it may sound, I believe under South Carolina law, if he said that. It sounds strange, but I think that might be the law. The jury could reject all of the state's evidence. So you don't take any question with the other side's view of the law? Not that particular issue. Well, isn't that the issue to side of the case, really? No, sir. Why not? Because there's absolutely no evidence in the state court record where he ever said this was an accident. I didn't say it. Right. That's the issue. That evidence, if there is evidence in the record, he may be entitled to some relief, correct? Well, he's got to overcome first the procedural bar. Then he's got to overcome the EE deferential standard of review because the PCR court. My point is I want to clarify. I don't want you to get to that argument. We're going to move to that argument yet. Yes, sir. I just want to be sure they were operating on the same law. And your view is, as is Ms. Croghan's, I think it may be right, if there's any evidence of involuntary manslaughter, of an accident, then that may be enough to suffice to get that involuntary manslaughter charge, correct? If there was in the state court, and it met the elements of involuntary manslaughter. I don't know about all that. I'm just asking. Isn't that all? There's two different things. There's a defense of accident, and so that gets confusing when you talk about accident. And there's involuntary manslaughter. But if there was evidence in the state court record to justify involuntary manslaughter, that is he killed with criminal negligence and it was unintentional, I agree with you. Right. So your argument is there's no such evidence in this record? That's correct. Where does even that claim come from now, though? I mean, he said that after the fact. We're talking about it. I want you to frame up what you see as the evidence. Is that he couldn't remember what happened? Or that I took the knife and I may have stabbed him one time and I don't remember what happened after that? Make that factual argument now. Okay. What the evidence is in state court is they had been out that afternoon together drinking. They had a previous difficulty where he cut her and she moved out. Then they, for some reason, she gets back with him. They go back to her house. There's an argument. He obtains a knife. He stabs her 39 times and kills her. That's the evidence at the guilty plea, and that's what he admits happened because he doesn't dispute what the solicitor said are the facts. Then at the PCR hearing, there's absolutely no testimony from him other than he says, I told my lawyer that I did it when I remembered what happened. His lawyer testified at the PCR. He told me he stabbed her, but he couldn't remember how many times he stabbed her. My point is you think none of that gives any rise to an inference of a factual inference of the necessary testimony for an involuntary manslaughter charge. That's correct. Just because 39 stabs doesn't give an inference of an accidental stab. Right. That's the objective evidence. Correct. The other evidence is that he doesn't even propose any way on how it happened or anything, just that he did it. That's correct, at the PCR. As far as I've said, the issue was procedurally devolted because nothing about this claim was presented in the state court. Also, the PCR court judge at the end of the order found that this issue had been waived and abandoned and the defendant had failed to meet his burden of proof on this ground because he offered no evidence. As a result of that, under Harrington v. Richter, that decision is entitled to double deference by this court under the AADPA. The defendant cannot overcome that burden. As we already talked about, under South Carolina law, he cannot even get there in this case. There's no evidence at the PCR about how this incident happened. There is no evidence at the guilty plea other than what the solicitor said and he agreed with the facts as recited by the solicitor. At the PCR, was there a claim of ineffective assistance of counsel? Yes.  What, if anything, was put on to support that claim? There were about six claims raised, Judge Gregory, at the PCR, in the application, including the one he's raising now. Exactly. In the application, but at the hearing, the issue was a melding of involuntary manslaughter and ineffective assistance for not telling me I was going to get life without parole. That's what his claim is now, is that counsel ineffectively did not pursue what was in the application that related to, as you say, I think very aptly, what would be necessary to establish South Carolina's very generous requirements to get that instruction. He didn't put it forward. That's the basis of the ineffectiveness. His default would be excused by that because he was entitled to effective counsel. That's the other claim. He didn't do it. He had it before him. It was in the application. He comes to the PCR, and it is bereft of anything. That's what they're arguing. You're right. They can't disagree with you. You're right. There's nothing to support that. All he had to do was get on the stand and say, listen, it was an accident, and that's what I would have said, and that's what I told counsel, if that was the case. I'm not saying . . . But he didn't do that at all. Nothing. Well, to overcome the procedural bar under Martinez, if this court finds it's procedurally barred, he's got to show a substantial claim, and he has made no showing of a substantial claim, and he cannot under the facts of this case where he stabbed the lady 39 times. He has not made that showing, and he cannot make that showing. There's no way he can get to involuntary manslaughter under South Carolina law where he stabbed her 39 times, and his alcohol-induced dementia has absolutely nothing to do with that. It doesn't help him get there. That would be an insanity defense, which he has not raised to this court. Unless there are any further questions, I will yield my time to the court. Thank you. Thank you. Ms. Grogan. Thank you, Your Honors, again. Your Honors, the Martinez case does not require that there be a substantial showing. It requires only that the underlying claim have some merit, and then the Supreme Court cites DeMiller L versus Cockrell, which establishes the requirement for when a certificate of appealability can be issued, and the only question there is whether or not reasonable jurists could disagree about whether or not there was some question in this case, even if ultimately the decision is decided entirely and unanimously against the particular petitioner. So all Mr. Ford needs to show is that, as he did here, because this court issued a certificate of appealability, that the underlying claim has sufficient merit that a court would be interested in hearing it. So Mr. Ford is not barred from presenting any evidence under the Martinez line by the third prong of whether or not his underlying claim has some merit. And as Your Honor mentioned, the crux of this case is that Mr. Ford accepted a guilty plea that gave him no better than the worst case scenario, worst case outcome at trial. And he should have had the opportunity to pursue the chance to get something other than that. And currently he may be barred from that because of a procedural default or a lack of evidence in the record. And if that's the case, this court should remand for an evidentiary hearing so that Mr. Ford can establish a greater record to show that he was entitled to some merit. What is the evidence in the record as it stands right now to show it was Your Honor. There is no evidence in the record before the PCR or the plea colloquy. However, in Mr. Ford's objections to the magistrate's report and recommendation, which because of the way habeas works or the ADPA works would not necessarily be before the court. But there, Mr. Ford claims that she actually came out with him and came at him with the knife and that he responded to her. And if this had been presented at trial, it would have given Mr. Ford the kind of circumstance he would need to So your answer is in the record that was necessary for the state court decision, there was no evidence on which to make that very minimal showing of involuntary manslaughter charge. There was an entitlement. Excuse me, Your Honor. There was the evidence of his dementia and his lack of knowledge about the events of the night. But lack of knowledge is not evidence of not of, of lack of the intent though, all that you have to have a claim of accident. Um, you don't, you, that's the only, let's just deal with that. That's the first part of the argument, I guess. There's your argument is factually, as I understand through the PCR process through that process in state court there. And I think the record is clear on this. There's no evidence of any proof of accident. Is that correct? No, you're asked to the act itself. Uh, no, your Honor. However, this isn't a great exam is, is a very good situation in which this court should remand for an evidentiary hearing. But I just want to ask you what's in the record right now. There's no evidence that he claims it was an accident, correct? No, your Honor. That comes later. Um, in the objections to the magistrates report, but you claim that there is some evidence maybe of the lack of intent because of his alcohol circumstances. Yes, your Honor. And that would form a defense or that would form the basis for an involuntary manslaughter charge. That would form the basis for pursuing an involuntary manslaughter charge. And if that was the case, his attorney, how is that in the record now at that point before the PCR court, your Honor, his competency report was, which indicates his dementia was introduced both in his plea colloquy and then was referenced in the PCR court. Um, and if, if this was the case that Mr. Ford had a chance of getting anything other than life in prison without the possibility of arguing to the court below the dementia argument, was that argued to the court? Uh, no, your Honor. It was not. I just say, you think the facts were there from which an argument could be made? Uh, yes, your Honor. And because there, there is a search circumstance where an argument could be made. His attorney should have told him of this perhaps very small chance to pursue something other than life in prison without the possibility of parole. It does not make any sense for Mr. Ford to have accepted the plea that he did. Um, as given the fact that he has maintained that he wanted to go to trial and would have gone to trial if he thought he could receive anything other than the outcome that he did. And Mr. Ford's claim is unique in that sense because it's really his only chance. And if it was his only chance, he should have been given the opportunity to pursue it. And his attorney should have told him that he may have had a chance of getting something other than the plea that he did. And if that's the case, Mr. Ford did suffer the requisite harm under the ineffective assistance line of cases, Strickland and Hill. But his, but you're putting the burden of his lawyer to tell him that based on there was no factual information on the record as to the stab was an accident. Is there? Uh, no, your honor, not in the record per se, before the PCR court and the plea colloquy, but there is say after the fact, he said, I told him that you're on ice. You can answer. Thank you. Um, no, I'm just saying, let's just say leaving aside your syndrome, alcohol syndrome issue. Let's deal with just the fact of the action. What, what was there that the lawyer, what, what evidence do we have or did the state court had that the lawyer was aware of the possibility of an involuntary manslaughter entitlement based on accident? There was no evidence based on accident, your honor, but the involuntary manslaughter instructions is just a step below the voluntary manslaughter instruction. The distinction for Mr. Ford is huge. It's five years in prison versus life in prison without parole. And it would not have taken, uh, much to kind of question whether or not this was a possibility for him. Um, as a result, your honor, Mr. Ford asked that this court either grant his habeas appeal or remand for a Martinez hearing. Thank you. Thank you. Ms. Grogan. I also want to thank professor Rutledge. We appreciate very much. Both of you, um, undertaking representation of this client. You've done a fine job. And we also appreciate your agreeing to participate in this program where students are allowed to come. You are encouraged much for us to continue to do set. Thank you. We'll come down and greet cancer.
judges: William B. Traxler, Jr., Roger L. Gregory, Dennis W. Shedd